ELIZABETH BACHMAN et al., Petitioners, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents.

First Department, November 27, 1984

## APPEARANCES OF COUNSEL

*Geoffrey Wright* of counsel (*Seavey Finferit Vogel Oziel & Skoller,* attorneys), for corporate respondents.

*Karen Shatzkin* for petitioners.

## OPINION OF THE COURT

MILONAS, J.

Respondent Turin House, located at 609 Columbus Avenue in Manhattan, is a cooperative apartment building constructed under article XI of the New York State Private Housing Finance Law. Financing for the project was provided through an FHA-insured mortgage pursuant to section 221 (subd [d], par [3]) of the National Housing Act (US Code, tit 12, § 1715*l*, subd [d], par [3]). In common with all residential cooperatives, Turin House is

governed by a board of directors composed of tenant-cooperators. Respondent Darwood Management, Inc., is the managing agent employed by Turin House. On October 1, 1978, petitioners, two single females in their twenties, sublet apartment 2D, a two-bedroom apartment, from James and Margaret Pittaway, the shareowners thereof. It is undisputed that this sublease was effected with the full knowledge and consent of respondents. There is also no claim by respondents that petitioners have ever been anything but exemplary tenants or that any complaint has ever been made against them.

On or about April 1, 1979, the Pittaways applied for permission to transfer their shares for apartment 2D to petitioners. All of the cooperative's rules and procedures were complied with, and petitioners supplied financial data demonstrating their eligibility under the Federal income requirements. Petitioners allege that the initial response to their application to purchase the shares to apartment 2D was silence and inaction for nearly two years despite repeated inquiries. Thereafter, and only following communications from petitioners' attorney, respondents offered a series of grounds upon which they based their disapproval of petitioners' application.

The first reason was that petitioners did not meet HUD eligibility regulations despite the fact that respondents had previously received a letter from the chief of the Multifamily Branch at the Department of Housing and Urban Development stating that the agency had no objection to two single persons occupying a single unit of appropriate size. The second explanation given for the rejection was that pursuant to Turin House regulations, a two-bedroom apartment must be occupied by a family consisting of three persons. However, the by-laws of the cooperative clearly authorize two people who do not constitute a family to occupy a two-bedroom apartment. The third reason cited was that while Turin House rules might not require that the residents of a two-bedroom apartment be three related individuals, such a restriction was indeed imposed by the New York City Department of Housing Preservation and Development. According to petitioners, and respondents do not now assert to the contrary, HPD regulations do not apply to article XI housing development fund companies such as Turin House.

All three of these grounds having been shown to be without foundation, respondents raised yet another objection. While the State Division of Human Rights was investigating the complaints filed by petitioners, respondent declared that the 10% allotment available for single, nonsenior and nonhandicapped

residents, the category under which petitioners were eligible, had already been exceeded in that of the 189 residential units at Turin House, 23 units belonged to that category. Petitioners conducted an inquiry into the matter and ascertained that of those 23 units purportedly occupied by single, nonsenior and nonhandicapped persons, 8 units had been improperly included and 8 units could not be contacted. At any rate, respondents have also discarded their most recent explanation for disallowing petitioners' application, and they now contend that the real issue before this court is whether or not Turin House can or should be mandated to make full use of the 10% allowance. Thus, respondents are resting their position solely on the argument that a board of directors possesses broad discretion to determine who shall become a shareholder and, in that regard, may reject an applicant for no reason at all.

After what seems to have been a limited investigation by a field representative on June 30, 1981, the State Division of Human Rights issued a finding of no probable cause to believe that respondents' actions were discriminatory. An appeal was taken from this decision, and on November 9, 1982, the Human Rights Appeal Board, concluding that the Division's dismissal of the complaints was "arbitrary, capricious, and an unwarranted exercise of discretion", remanded the matter for further proceedings. The Appeal Board held that the Division's determination relied upon erroneous facts. For example, although the Division had stated that Turin House is a housing project for the elderly, it is in fact a cooperative open to persons of all ages. The agency had also found that handicapped people were eligible only within the 10% allotment when the by-laws expressly provide that handicapped occupants do not count against the 10% category. In addition, the Division had determined that the maximum number of units allowed by the 10% category were already occupied by people under the age of 62 despite the fact that, as noted by the Appeal Board, this conclusion was premised upon an inaccurate list supplied by respondents. The Appeal Board instructed the Division to conduct a further investigation.

However, there is no indication that the Division complied with the mandate of the Appeal Board. While the Division did issue a new report correcting its earlier factual errors, it is alleged by petitioners and undisputed by respondents that the agency did not make any independent inquiry to verify respondent's assertions. The Division's second determination of no probable cause simply maintained that since single, unmarried females had been accepted by the cooperative in the past, there

was no reason to believe that the complainants had been unlawfully discriminated against. Accordingly, petitioners filed another notice of appeal with the Appeal Board on May 17, 1983, but, after the abolition of the Appeal Board, the instant appeal to this court ensued.

In the absence of discriminatory practices prohibited by law, the directors of a residential housing cooperative have the contractual and inherent power to approve or disapprove the transfer of shares and the assignment of proprietary leases. (*Goldstone v Constable,* 84 AD2d 519.) Subdivision 1 of section 19-a of the Civil Rights Law prohibits a "corporation formed for the purpose of the cooperative ownership of real estate * * * [to] withhold its consent to the sale or proposed sale of certificates of stock or other evidence of ownership of an interest in such corporation because of the race, creed, national origin, or sex of the purchaser." Pursuant to subdivision 2-a of section 296 of the Executive Law, it is unlawful for the owner, lessee, sublessee, assignee or managing agent of publicly assisted housing accommodations to discriminate on the basis of age, sex or marital status, among other enumerated classifications. According to subdivision 11 of section 292 of the Executive Law, the term "publicly-assisted housing accommodations" includes housing whose construction was financed, guaranteed or insured by the Federal Government or any agency thereof, as is the situation with Turin House. Therefore, the law is clear that except to the extent that the number of units available for occupancy to single persons does not exceed 10% of the total number of apartments in Turin House, it would be unlawful for respondents to discriminate solely because of the age, sex or marital status of the applicant.

Respondents now concede that less than 10% of the units at Turin House are occupied by unmarried individuals. They also do not contend that petitioners are in any way ineligible to purchase the shares to apartment 2D. Respondents merely rely on the discretion possessed by a board of directors to decide who shall be permitted to become a member of the corporation. However, an examination of the record herein reveals that petitioners have made out at least a preliminary showing of probable cause to believe that they have been discriminated against on the basis of their age, sex and/or marital status, particularly in view of respondents' failure to dispute petitioners' factual allegations and their repeated attempts to use patently erroneous grounds for denying petitioners' application.

Under these circumstances, the determination of the State Division of Human Rights was not supported by substantial evidence. (See *300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *State Div. of Human Rights v Columbia Univ.,* 39 NY2d 612.) As the Court of Appeals has declared, "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra,* at p 183). Moreover, where, as appears to have been the case here, the record demonstrates that the Division conducted a one-sided and abbreviated investigation, its determination of no probable cause will be overturned as capricious. (*Matter of Gregory v New York State Human Rights Appeal Bd.,* 64 AD2d 775.)

It is evident that the Division made an inadequate inquiry into petitioners' charges in the first instance and, upon remand, took little, if any, action to comply with the direction of the Appeal Board and conduct a more thorough investigation. Therefore, the determination of the State Division of Human Rights was not only unsupported by substantial evidence but constituted an arbitrary and capricious exercise of its discretion. (See *Goldsmith v New York Psychoanalytic Inst.,* 73 AD2d 16.)

Accordingly, the petition is granted and the determinations of the State Division of Human Rights, dated May 4, 1983, which held that there was no probable cause to believe that respondents Turin House Board of Directors and Darwood Management, Inc., had unlawfully discriminated against petitioners, should be annulled and the matter remanded to the State Division of Human Rights for a full and thorough investigation, without costs.

KUPFERMAN, J. P., SULLIVAN, CARRO and ALEXANDER, JJ., concur.

Order, State Division of Human Rights, dated May 4, 1983, unanimously annulled and the matter remanded to the State Division of Human Rights for a full and thorough investigation, without costs and without disbursements.