(June 27, 1985)

■ EDNA H. M. DITARANTO, Petitioner, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents. — Petition seeking to annul a determination order after investigation (Armando S. Martinez, Regional Director), State Division of Human Rights, dated and mailed July 13, 1984, which dismissed the complaint upon a finding of no probable cause to believe that the termination of complainant's employment was discriminately based on her sex and/or condition of pregnancy in contravention of Executive Law § 296 *et seq.*, is dismissed, and the determination and order confirmed, without costs and disbursements.

Petitioner seeks annulment of the Division's order, alleging it erroneously concluded that her employment had been terminated when she failed to heed respondent employer's warning about her absences from work when, as she claims, she was never warned. If her claim be conceded, we must, nonetheless, dismiss the petition. It does not charge any discrimination on the grounds of petitioner's sex.

The dissent, impressed because petitioner was respondent's first pregnant employee and finding that she was fired without warning because she was absent from work on January 19, 1984, perceives a possible "subtle and devious" form of sex discrimination sufficient to warrant a "confrontational conference". We find no support for this perception in the record before the Division.

Respondent is a New York City offshoot of a Brazilian bank. At the time of petitioner's complaint, it had only been in existence four years. In that time it had grown from four to but 19 employees. Its parent in Brazil has 35,000 employees and many have been pregnant. We cannot draw from these facts a policy against pregnant employees. Similarly, the record belies petitioner's naked assertion that she had no notice that her absence from work might cause her termination. Respondent's employee's manual warns: "Excessive absence or lateness may be a cause for varied disciplinary actions, possibly culminating in dismissal". Petitioner has signed an acknowledgment that she received the manual.

Petitioner's firing for her absence on January 19 cannot be viewed in a vacuum. There is a record of repeated absences and an unsatisfactory attitude. Petitioner was hired in November 1981 and her work was satisfactory until November 1982 when it suffered a marked decline. For the year then commencing, she took 10 sick days and five days of "other excuse". She was found unwilling to work past 5:00 P.M. when the work required it, even though the employee's manual had warned her that this was expected. Her work had deteriorated to such a degree that in November 1983 she was given the minimum permissible raise. Although the manual forbade discretionary absence on a day after vacation, petitioner did not appear for work the day following her vacation in January. Despite the manual requiring an early call-in when absent, petitioner did not call that day until two in the afternoon. She excused her absence by claiming that her flight had arrived early that morning. On January 11, she called her supervisor and said she would not be at work that day because it had snowed the night before, even though she was told that it was not a major storm and that everyone else had come to work. On January 16, she told her supervisor that, if it snowed that night, she would not work the next day. On January 19, she neither appeared nor called in. When asked why the next day, she referred to her explanation of January 16. She was then terminated. The record makes no connection between petitioner's seven months' pregnancy and this 14 months of insouciance toward her employment. Concur — Murphy, P. J., Sullivan, Carro and Lynch, JJ.

Ellerin, J., dissents in a memorandum as follows: I would annul the order and determination of the State Division of Human Rights and remand for further investigation. A review of the record indicates that the Division for Human Rights failed to conduct a sufficient inquiry to form a reasonable basis for its administrative determination summarily dismissing the complaint.

Petitioner was originally hired by respondent bank in 1981 as a receptionist and within a short time thereafter was promoted to the position of secretary, with above-average job ratings. She was discharged from that position on January 20, 1984 when she was seven months pregnant. In the complaint initially filed with the State Division of Human Rights, petitioner states that she was advised by the comptroller of the bank that she was terminated because she took a leave of absence on January 19, 1984 without notifying the bank, but she contends that her termination without warning was, in fact, by reason of her pregnancy. In support of her claim of discrimination she alleges that she was the first pregnant employee in respondent's history, that her failure to report to work on January 19, 1984 was due to adverse weather conditions causing concern for the welfare of herself and her baby, that she was never informed of the bank's policy, and she further indicates "on information and belief" that another co-worker had similarly violated bank policy without being subjected to such severe disciplinary action.

While the Division of Human Rights wrote to the bank inviting it to explore the possibility of conciliating the matter, the bank chose not to do so and instead submitted a response in the form of a letter signed by its comptroller, with various attachments. The net of the response is that petitioner was fired because of her absences from work contrary to the bank's policy as delineated in its "Personnel Manual", after warnings, and not because of her pregnant condition. In a self-serving convoluted fashion there is a denial in respondent's letter of knowing of another employee "who similarly violated bank policy without being subjected to severe disciplinary action". The letter further notes that the bank employs mothers of young children, although there is an acknowledgment that petitioner was the first and only pregnant employee.

Following the receipt of respondent's letter, the Regional Director of the Division of Human Rights held a "file review conference" with petitioner after which she submitted a letter denying that she had ever been given any warning as claimed by respondent and reiterating her charge that she was discriminated against due to her pregnancy because respondent bank wished to avoid the payment of maternity benefits.

Notwithstanding petitioner's contrary assertions, the Regional Director accepted, without further question or inquiry, the position set forth in the letter sent by respondent bank and made a determination, dated July 13, 1984, that there was no probable cause to believe respondent engaged in the unlawful discriminatory practice complained of and ordered a dismissal of

the complaint. Such determination is unsupportable on the basis of the cursory and wholly inadequate investigation conducted in this case.

As so aptly observed by the Court of Appeals, "discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 183). It is precisely because of the invidious forms that discrimination takes that it is so essential that before making a determination on probable cause the State Division of Human Rights conduct a thorough and meaningful investigation or inquiry when such charges are brought.

An adequate inquiry includes giving a complainant a full opportunity to present contentions and to rebut assertions by respondent and also contemplates the interviewing of respondent's witnesses. (*See, State Div. of Human Rights v New York State Drug Abuse Control Commn.,* 59 AD2d 332; *Matter of Gregory v New York State Human Rights Appeal Bd.,* 64 AD2d 775.) Such is a far cry from the investigation on which the present finding is based.

In the instant case, petitioner was fired for an absence from work due to inclement weather at a time when she was seven months pregnant. That a previously esteemed employee suffered the extremely harsh penalty of dismissal for such an infraction would appear, at the very least, suspect. Petitioner unequivocally denies having been warned of such contingency and indicates that support for her position can be found in the testimony of bank officials at her unemployment hearing. Despite such unequivocal denial, the Regional Director arbitrarily accepted respondent's unverified written assertion that such warnings had been given, without affording petitioner an appropriate forum or opportunity to directly rebut that allegation. Such rebuttal ordinarily is, and can best be, presented at a "confrontation conference", with all parties to the complaint present, which is generally held as a matter of routine. (*Matter of Gregory v New York State Human Rights Appeal Bd., supra; State Div. of Human Rights v Mecca Kendall Corp.,* 53 AD2d 201.) The failure to hold such a "confrontation conference" in this case and the inadequacy of the investigation into the relevant issues, including whether petitioner was warned of the potential sanction for absence, which might require reference to the related unemployment proceeding, a comparison of petitioner's treatment in relation to that accorded other absentee employees and whether respondent bank was seeking to avoid

paying maternity benefits, require that the finding of no probable cause based, as it is, on an insufficient record, be overturned as an arbitrary and capricious exercise of discretion. (*See, Moore v State Div. of Human Rights,* 110 AD2d 507; *Tenenbaum v State Div. of Human Rights,* 50 AD2d 257; *Bachman v State Div. of Human Rights,* 104 AD2d 111.)

Moreover, for the State Division of Human Rights to dismiss a complaint on the basis of "no probable cause", it must appear virtually as a matter of law that the complaint lacks merit. (*Mayo v Hopeman Lbr. & Mfg. Co.,* 33 AD2d 310.) No such finding can be made on the inadequate record here present.

In light of the possibility of discrimination raised by the allegations in petitioner's complaint, the determination of "no probable cause" should be annulled and the matter should be remanded for further investigation which should include the holding of a confrontation conference.