Oliver F. FOREMAN and Helen G. Foreman, Appellants/Cross-Appellees,

v.

ANCHORAGE EQUAL RIGHTS COMMISSION and Sally Hohman, Appellees/Cross-Appellants.

Nos. S-2677, S-2716.

Supreme Court of Alaska.

Sept. 8, 1989.

Randall E. Farleigh, Farleigh & Waldock, Anchorage, for appellants/cross-appellees.

John E. Havelock and Paula M. Haley, Anchorage Equal Rights Comm'n, Anchorage, for appellees/cross-appellants.

Nancy R. Gordon, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for amicus curiae, State Com'n for Human Rights.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This is an appeal by a landlord from a decision of the superior court affirming a determination by the Anchorage Equal Rights Commission (AERC) that the landlord's policy against renting to unmarried couples unlawfully discriminated on the basis of marital status. The landlord argues that the AERC erred in its interpretation of the pertinent state and local laws, and that the AERC's delay in rendering a decision divested the AERC of jurisdiction. The AERC cross-appeals from that part of the court's decision holding that the rental policy did not violate state law.

I

Oliver and Helen Foreman own several rental properties in the Anchorage area. Their tenants include single parents with children, married couples and married couples with children. The Foremans' rental policy limits occupancy of a single unit to what the Foremans characterize as a "single legal entity" or a family unit related by blood or marriage.

In 1984, Sally Hohman, a single woman with an infant child, attempted to rent a single-bedroom unit for herself, her child and the child's father, Steven Kiefer. The Foremans refused to rent the apartment to Hohman and Kiefer when they learned that they were not married.[1]

1. The Foremans would have rented the apart- ment to Hohman and the child; however, Hoh-

Hohman filed a discrimination complaint with the AERC. After a public hearing, the AERC adopted the hearing examiner's proposed decision and held that the Foremans had violated anti-discrimination provisions found in both the Anchorage Municipal Code, AMC 05.20.020,[2] and state law, AS 18.80.240(2).[3] The Foremans appealed to the superior court. The superior court reversed that part of the AERC's decision holding that the Foremans had violated AS 18.80.240(2). The court, however, upheld the AERC on all other issues. This appeal and cross-appeal followed.

## II

The Foremans argue that the state and municipal prohibitions against discrimination based on marital status do not protect the interests of unmarried couples such as Hohman and Kiefer. The AERC and the State Commission for Human Rights contend that discrimination against unmarried couples constitutes discrimination based on marital status.

When interpreting an ordinance or a statutory provision, words are given their ordinary and common meaning. *Wilson v. Municipality of Anchorage*, 669 P.2d 569, 571–72 (Alaska 1983). Our goal is to give effect to the legislature's intent[4] with due regard for the meaning that the language in the provision conveys to others. *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982). Because this is a case of first impression in this state, "[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

Both AS 18.80.240 and AMC 05.20.020 plainly prohibit discrimination based on marital status. The Foremans reason, however, that these provisions only prohibit discrimination against an individual, based on that person's marital status, rather than prohibiting discrimination against two people. *See Prince George's County v. Greenbelt Homes*, 49 Md.App. 314, 431 A.2d 745, 747–48 (1981) (unmarried couple has no collective marital status).

It is true that the statute and ordinance refer to discrimination against "a person." AS 18.80.240; AMC 05.20.020. However, both the state statute and the municipal code define "person" to include "one or more individuals."[5] AS 18.80.300(11);

man did not wish to rent the unit on those terms.

2. AMC 05.20.020 provides in part:
 [I]t is unlawful for the owner, lessor, manager, agent or other person having the right to sell, lease, rent or advertise real property:
 (A) To refuse to sell, lease or rent the real property to a person because of race, religion, age, sex, color, national origin, marital status or physical handicap;
 (B) To discriminate against a person because of race, religion, age, sex, color, national origin, marital status or physical handicap in a term, condition or privilege relating to the use, sale, lease or rental of real property. . . .

3. AS 18.80.240 provides in part:
 It is unlawful for the owner, lessee, manager or other person having the right to sell, lease or rent real property
 . . . .
 (2) to discriminate against a person because of sex, marital status, changes in marital status, pregnancy, race, religion, physical or mental disability, color or national origin in a term, condition or privilege relating to the use, sale, lease or rental of real property; however, nothing in this paragraph prohibits

the sale, lease or rental of classes of real property commonly known as housing for "singles" or "married couples" only[.]

4. AS 18.80.200 provides in part:
 (a) It is determined and declared as a matter of legislative finding that discrimination against an inhabitant of the state because of race, religion, color, national origin, age, sex, marital status, changes in marital status, pregnancy or parenthood is a matter of public concern and that this discrimination not only threatens the rights and privileges of the inhabitants of the state but also menaces the institutions of the state and threatens peace, order, health, safety and general welfare of the state and its inhabitants.
 (b) Therefore, it is the policy of the state . . . to eliminate and prevent discrimination in . . . the sale, lease, or rental of real property because of race, religion, color, national origin, sex, age, physical or mental disability, marital status, changes in marital status, pregnancy or parenthood.

5. Moreover, the municipal code defines "discrimination" as "any direct or indirect act or practice of exclusion . . . of a person or persons because of . . . marital status." AMC 05.20.-

AMC 05.20.010(M). Thus, we believe that these provisions were intended to prevent discrimination against more than one person.

The Foremans next argue that the anti-discrimination provisions were not intended to protect unmarried couples because cohabitation was a criminal offense at the time the state and municipal acts were first amended to prohibit marital status discrimination. *See McFadden v. Elma Country Club*, 26 Wash.App. 195, 613 P.2d 146, 148 (1980) (former statute outlawing unmarried cohabitation vitiates argument that legislature intended to prohibit housing discrimination against unmarried couples).

The state prohibition against housing discrimination based on marital status was first enacted in 1975; the municipal ordinance was passed in 1976. Ch. 104, § 10, SLA 1975; Assembly Ordinance 203–76 (Nov. 9, 1976); *compare* AMC 05.20.020 *with* former City of Anch.Mun.Code 08.36.-090 (1975). Until 1978, it was a crime under state law for an unmarried couple to live together as husband and wife. AS 11.40.040.[6] According to the Foremans, the antidiscrimination statutes should not be construed to protect conduct which was criminal when the provisions were amended.

In 1975, before the pertinent amendments to AS 18.80.240 and AMC 05.20.020,

the legislature declared that "the criminal code of the State of Alaska represents a considerable and vital body of law which has not undergone substantive revision and is consequently vastly out of step with constitutional and social developments of recent decades." S.Con.Res. No. 5, (1975). In 1978, the legislature undertook a comprehensive revision of the criminal code and repealed in its entirety chapter 40 of title 11, which had governed "crimes against morality and decency." *See* ch. 166, § 21, SLA 1978. Certain provisions in former chapter 40 were replaced by scattered sections prohibiting contributing to the delinquency of a minor, AS 11.51.130; unlawful marrying, AS 11.51.140; disorderly conduct, AS 11.61.110; misconduct involving a corpse, AS 11.61.130; cruelty to animals, AS 11.61.140; and prostitution, AS 11.66.100–11.66.150. Notably, former AS 11.40.040 was *not* re-enacted.

 Given the intent so plainly reflected in the language of AS 18.80.240 and AMC 05.20.020, we think it would be manifestly unreasonable to limit the effect of these modern, remedial provisions by reference to an outdated criminal statute which was repealed eleven years ago. Thus, we reject the Foremans' contention that AS 18.80.240 and AMC 05.20.020 was not intended to protect unmarried couples such as Hohman and Kiefer.[7]

---

010(D). The code also defines "marital status" to include "differential treatment shown toward a person because he/she is not married" or because "he/she is a parent and unmarried." AMC 05.20.010(K).

6. Former AS 11.40.040 (repealed 1978) provided:

A person who cohabits with another in a state of adultery or fornication is punishable by a fine of not more than $500, or by imprisonment in the penitentiary for not less than one year nor more than two years, or by both.

7. We recognize that other jurisdictions addressing this issue have reached varying results. Most have relied on the plain meaning of the statute.

Courts in the District of Columbia, California, Minnesota, and New Jersey have ruled that statutes prohibiting discrimination based on marital status protect unmarried couples such as Hohman and Kiefer. *Markham v. Colonial Mortgage Serv. Co.*, 605 F.2d 566, 569–70 (D.C. Cir.1979) (Equal Credit Opportunity Act re-

quires lender to aggregate income of unmarried joint credit applicants when income would have been aggregated had they been married); *Hess v. Fair Employment & Housing Comm'n*, 138 Cal.App.3d 232, 187 Cal.Rptr. 712, 714 (1982) (Fair Employment and Housing Act prohibits discrimination by landlord against unmarried couples); *Atkisson v. Kern County Housing Authority*, 59 Cal.App.3d 89, 130 Cal.Rptr. 375, 381 (1976) (same); *State v. Porter Farms*, 382 N.W.2d 543, 547 (Minn.App.1986) (same) (citing *State v. Sports & Health Club*, 370 N.W.2d 844, 847 (Minn.1985) (employment discrimination)); *Zahorian v. Russell Fitt Real Estate Agency*, 62 N.J. 399, 301 A.2d 754, 757 (1973) (landlord's refusal to rent apartment to two persons of the same sex constituted unlawful discrimination based on marital status). In contrast, courts in Maryland have held that unmarried couples are not protected by statutory prohibitions against discrimination based on marital status. *Maryland Comm'n on Human Relations v. Greenbelt Homes*, 300 Md. 75, 475 A.2d 1192, 1196–97 (App.1984) (condominium regulation that oper-

Finally, the Foremans argue that this interpretation of AS 18.80.240(2) is inconsistent with the proviso permitting rental to singles or married couples only. We disagree.

■ The only pertinent exception to the anti-discrimination statute permits an owner to rent housing for "singles" or "married couples" only. AS 18.80.240(2). The Foremans, however, rented to all classes of persons: single persons, married persons and people with children. They did not purport to rent only to single people, or only to married people; therefore, the superior court erred in concluding that this exception authorized the discriminatory policy at issue here.

■ We conclude that state and municipal prohibitions against discrimination based on marital status protect the rights of unmarried couples. The Foremans would have rented the apartment to Hohman, Kiefer and the infant had Hohman and Kiefer been married; the Foremans refused to rent the apartment only after they learned that Hohman and Kiefer were not married. This constitutes unlawful discrimination based on marital status.[8]

## III

The Foremans argue that the AERC lacked jurisdiction to render its final order because (1) the AERC failed to propound findings of fact within 180 days of the filing of the complaint, AMC 05.30.020,[9] and (2) the AERC failed to issue its final order within 60 days after the Foremans objected to the proposed order, Anch.Mun. Code of Regs. 05.10.015(B).[10]

■ Hohman filed the complaint on July 12, 1984. The AERC was required to issue investigative findings of fact by January 1985. In January 1985, the AERC chairman extended the time for issuing the preliminary findings, in part because the AERC had lost contact with Hohman, and in part because the Foremans refused to comply with AERC discovery requests.[11] We perceive no abuse of discretion in the decision to extend the deadline for preliminary findings until June 1985.

The AERC complied with the extension order when it issued preliminary findings

ates to prohibit unmarried cohabitation is not discrimination based on marital status); *Prince George's County v. Greenbelt Homes*, 49 Md.App. 314, 431 A.2d 745, 747–48 (1981) (upholding country club's denial of membership to unmarried couple). There is a split of authority in the Washington Court of Appeals. *Compare Loveland v. Leslie*, 21 Wash.App. 84, 583 P.2d 664 (1978) (landlord discriminated on the basis of marital status when it refused to rent an apartment to two male roommates when the landlord would have rented to a married couple), *with McFadden v. Elma Country Club*, 26 Wash.App. 195, 613 P.2d 146, 148 (1980) (country club may refuse to admit to membership an unmarried woman cohabiting with a man).

The New York rule is unclear; although the Court of Appeals permitted a landlord to evict a tenant for unmarried cohabitation in violation of a lease restriction limiting occupancy of an apartment to members of the tenant's immediate family, *Hudson View Properties v. Weiss*, 59 N.Y.2d 733, 463 N.Y.S.2d 428, 429, 450 N.E.2d 234, 235 (1983), a lower court later held that a condominium association was guilty of discrimination based on marital status when it refused to approve the sale of a unit to two single female roommates, *Bachman v. State Div. of Human Rights*, 104 A.D.2d 111, 481 N.Y.S.2d 858, 860 (1984).

8. The Foremans also argue that AS 18.80.240 preempts AMC 05.20.020. State preemption of municipal enactments occurs when the ordinance substantially interferes with the effective functioning of the statute or its underlying purpose. *Liberati v. Bristol Bay Borough*, 584 P.2d 1115, 1122–23 (Alaska 1978). Here the ordinance and the statute further the same goals in the same way; therefore, no issue of preemption exists.

9. AMC 05.30.020 provides:

The commission shall investigate promptly and impartially the matters set out in the filed complaint.... The commission shall in any event make findings of fact within 180 days after the filing of the complaint.

10. Anch.Mun.Code of Regs. 05.10.015(B) provides in part:

When an objection has been timely filed, the commission shall, within 60 days of the filing of the objection, review the written record, proposed findings, conclusions and objections, and shall issue a final order determining the controversy....

11. Anch.Mun.Code of Regs. 05.10.001 permits the equal rights commissioner to relax the application of the rules in the interests of justice.

in March 1985. Following a hearing in December 1986, a hearing officer issued proposed findings in February 1987. The Foremans objected to the proposed findings on March 9, 1987; thus, the AERC's final report would have been timely sixty days later, on May 8, 1987. The order, however, was not issued until May 18, 1987, ten days after the deadline.

■ We do not endorse the long and drawn-out procedure followed by the AERC in this case. The AERC should act promptly to investigate and decide discrimination complaints. However, despite the unseemly delay in bringing this case to a conclusion, the record fails to establish that the Foremans were prejudiced in any way. In fact, the delay permitted the Foremans to continue a discriminatory practice for almost three years after the AERC first learned of it. Under these circumstances, the superior court did not err in concluding that the AERC had jurisdiction to issue its order.[12]

The decision of the AERC is AFFIRMED.

---

**12.** We have considered the other arguments on appeal and conclude that they are without merit.