**UNITED STATES of America, Plaintiff,**

v.

**MATANUSKA–SUSITNA BOROUGH, Kenai Peninsula Borough, and Fairbanks North Star Borough, Defendants.**

No. S–6128.

Supreme Court of Alaska.

Dec. 8, 1995.

Mickale C. Carter and Richard L. Pomeroy, First Assistant United States Attorneys, and Robert C. Bundy, United States Attorney, Anchorage, for Plaintiff. Michael Gatti, Borough Attorney, Palmer, for Matanuska–Susitna Borough.

Kristine A. Schmidt, Deputy Borough Attorney, and Thomas R. Boedeker, Borough Attorney, Soldotna, for Kenai Peninsula Borough. Gary Stapp, Assistant Borough Attorney, Fairbanks, for Fairbanks North Star Borough.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

This case involves a certified question from the United States District Court for the District of Alaska regarding the meaning of AS 29.45.030(a)(1)(B). That statute exposes real properties that are "retained as an investment" by state agencies to local government taxation. A federal statute and regulation subject federal property to local taxation to the same extent state property of like kind is taxed.[1] This dispute arose because the Fair-

---

**1.** 42 U.S.C. § 1490h (1988), provides in part:

All property subject to a lien held by the United States or the title to which is acquired or held by the Secretary under this subchapter other than property used for administrative purposes shall be subject to taxation by a State ... and local political subdivisions in the same

manner and to the same extent as other property is taxed....

Additionally, the Farmers Home Administration (FmHA) regulation regarding payment of taxes states in part:

Property acquired by FmHA ... is subject to taxation by State and local political jurisdictions in the same manner and to the same

banks–North Star Borough, Kenai Peninsula Borough, and Matanuska–Susitna Borough (collectively, the Boroughs) assessed taxes pursuant to AS 29.45.030(a)(1)(B) on properties foreclosed upon by the federal Farmers Home Administration (FmHA). FmHA refused to pay Borough taxes, claiming that it was not retaining the properties for investment, but was instead holding title to them temporarily before resale. We hold that AS 29.45.030(a)(1)(B) authorizes taxation of foreclosed state property and thus that these FmHA properties are taxable.

## II. *FACTS AND PROCEEDINGS*

FmHA provides loans to individuals acquiring homes. 42 U.S.C. § 1471–1490 (1988). When the borrowers do not make the agreed payments (including interest), FmHA is authorized to foreclose on the property. 42 U.S.C. § 1475(b), 1480(d) & (e).

After foreclosing upon a number of properties located in the Boroughs, and before reselling them to new owners, FmHA held title to those properties. 42 U.S.C. § 1480(e) (1988). The Boroughs assessed taxes on those properties pursuant to 42 U.S.C. § 1490h and AS 29.45.030.[2] FmHA disputed the Borough assessors' determination on the taxability of the properties, and refused to pay the property taxes due.

In February 1991 FmHA sued the Matanuska–Susitna Borough (Mat–Su) in the United States District Court for the District of Alaska, *United States v. Matanuska–Susitna Borough*, A91–052 CI, arguing that its properties were exempt from taxation. Mat–Su responded that the properties were not exempt and raised certain affirmative defenses. In May 1991 the parties settled the case; Mat–Su agreed not to tax property held by FmHA until the Alaska Legislature authorized such action.

In June 1991 the legislature amended AS 29.45.030(a), effective January 1, 1992, to read:

> extent as other property of the same kind, unless State law specifically exempts property owned by the Government from taxation.
> 7 C.F.R. § 1955.68 (1995).

**2.** AS 29.45.030(a)(1) (1986) originally stated:

The following property is exempt from general taxation:

(1) municipal property, . . . or state property, except that

(A) a private leasehold, contract, or other interest in the property is taxable to the extent of the interest;

(B) notwithstanding any other provision of law, property acquired by an agency, corporation, or other entity of the state through foreclosure or deed in lieu of foreclosure and retained as an investment of a state entity is taxable; this subparagraph does not apply to federal land granted to the University of Alaska under AS 14.40.380 or 14.40.390, or to other land granted to the university by the state to replace land that had been granted under AS 14.40.380 or 14.40.390;

. . . .

(8) property of a political subdivision, agency, corporation, or other entity of the United States to the extent required by federal law; except that a private leasehold, contract, or other interest in the property is taxable to the extent of that interest.

After the amendment, the Boroughs continued to assess taxes on property the FmHA acquired through foreclosure and on other similarly situated federal and state agency property. FmHA refused to pay Borough property taxes, arguing that the doctrine of intergovernmental immunity would prevent any taxation of FmHA property. When FmHA conveyed these properties to private buyers, the Boroughs assessed the new property owners with the taxes which the FmHA had refused to pay. *See* AS 29.45.300 (providing that unpaid property taxes become a property lien encumbering the property).

In March 1993 FmHA again filed suit in the United States District Court against the Boroughs, seeking (1) a preliminary injunction preventing the Boroughs from foreclos-

> The following property is exempt from general taxation:
> (1) municipal, state, or federally owned property, except that a private leasehold, contract or other interest in the property is taxable to the extent of the interest.

ing on property or forcing the sale of property to obtain taxes assessed while FmHA owned the property; (2) a declaration that the Boroughs are not empowered to tax property owned by FmHA and held under the rural housing program; and (3) an injunction forbidding the Boroughs from seeking to assess taxes on property during the time it is owned by FmHA under the rural housing program.

The Boroughs and FmHA filed cross-motions regarding several legal issues in the case, including the meaning of the language in AS 29.45.030(a)(1)(B)—"acquired ... through foreclosure or deed in lieu of foreclosure and retained as an investment." After oral argument on the motions, the federal district court certified the following question to this court by order dated December 22, 1993:

> What is the meaning of "retained as an investment of a state entity" as that phrase is used in AS 29.45.030(a)(1)(B)?

We granted certification, under Appellate Rule 407, and ordered the FmHA and the Boroughs to brief the following issue:

> Is real property acquired by a state agency through foreclosure or in lieu of foreclosure subject to local taxation under AS 29.45.030(a)(1)(B), or any other provision of law, if the agency retains the foreclosed property for the sole purpose of resale to a new, private owner? [3]

## III. *DISCUSSION*

The pivotal issue regards the meaning of the phrase "retained as an investment" as used in AS 29.45.030(a)(1)(B). The language, legislative history, and public policy convince us that the Boroughs can tax property acquired by a state agency through foreclosure and held by the agency for resale.

**3.** The State of Alaska filed an amicus curiae brief which it later withdrew with this court's permission.

**4.** We note that FmHA's regulations refer to its loans as "investments." 7 C.F.R. § 1955.113 (1995), which refers to rural residential property foreclosed upon by FmHA, states:

> **§ 1955.113 Price (housing).**
> Real property will be offered or listed for its present market value, as adjusted by any ad-

### A. *Language of AS 29.45.030(a)(1)(B)*

 The United States argues on behalf of FmHA that a plain language interpretation of "retained as an investment" means that land is retained as an "investment" if such retention is for the purpose of securing a profit. The United States contends that property obtained by foreclosure and retained for resale is not retained as an "investment" and that such property more properly falls in another category, not mentioned by the legislature, "retained for resale."

The Boroughs argue that all property held for other than administrative purposes by a state or federal agency is held for "investment" and that "retained as an investment" could have no other logical meaning. The Boroughs argue that the mere act of foreclosing on and retaining property is considered sufficient to sustain the taxability of the property, because foreclosing on and retaining property secured by agency loans is part of the agency's investment program.[4] They claim that interest earned on money lent by an agency constitutes an investment. The Boroughs also contend that the only purpose of the foreclosure—retention and subsequent resale of agency property—is to protect the investment.

In essence, the Boroughs argue that when an agency retains land upon foreclosure for resale, it is retaining the land for investment. This argument is consistent with the common meaning of the words of the statute. Although Title 29 of the Alaska Statutes does not define "investment" as it is used in AS 29.45.030(a)(1)(B), the definition in *Black's Law Dictionary* 825 (6th ed. 1990) provides guidance in considering the meaning of that term:

> ministrative price reductions provided for in this section.... [W]hen a section 515 RRH credit sale is being made to a nonprofit organization or public body to utilize former single family dwellings as a rental or cooperative project for very-low-income residents, the price will be the lesser of the Government's *investment* or market value, less administrative price reductions, if any.

(Emphasis added.)

The placing of capital or laying out of money in a way intended to secure income or profit from its employment.... to place money or property in business ventures or real estate, or otherwise lay it out, so that it may produce revenue or gain (or both) in the future.

*Webster's Dictionary* provides similar support, defining "investment" as "an expenditure of money for income or profit or to purchase something of intrinsic value ... the sum invested or the property purchased ... *the commitment of funds with a view to minimizing risk and safeguarding capital while earning a return....*" *Webster's Third New International Dictionary* 1190 (1969) (emphasis added). Agency ownership is a vehicle by which title can be transferred to another individual, allowing the agency to recover, in addition to the principal and interest payments made by the foreclosed debtor, additional principal and interest payments from the buyer. By loaning money on the real property, the agency invested funds in the property, recovered the funds with interest until default, foreclosed upon and held the property for resale, and then resold the property. Even if the property were resold at a loss to the agency, the substance of the transaction protects and recovers the investment of funds in real property.

 Even though the language of AS 29.45.030(a)(1)(B) is not as clear as it might be, in our view it is more consistent with the interpretation advanced by the Boroughs than the interpretation proposed by FmHA. Fortunately, the legislative history sheds additional light on the intended meaning of the statute, and confirms that the Boroughs' interpretation is the correct one.[5]

### B. *Legislative History of AS 29.45.030(a)(1)(B)*

Although the question certified by the federal district court pertains to property ac-quired by a state agency for resale, the legislative history expressly discusses similarly held federal property. Thus, the following discussion focuses on the legislative history directly relevant to the federal litigation then pending.

Before the legislature amended AS 29.45.030 in 1991 to allow expressly for taxation of foreclosed properties held by the state or federal government, FmHA refused to pay property taxes assessed on property which it owned for relatively short periods of time following foreclosure. The legislature amended AS 29.45.030 by enacting CSSB 70 as Ch. 85, SLA1991. In a memorandum to the House Finance Committee co-chairs, Senator Drue Pearce, sponsor of SB 70, cited FmHA's refusal to pay taxes as one of the primary reasons for introducing the bill:

> CSSB 70 (FIN) extends to federal properties similarly held and not otherwise exempt from taxation by the provisions of federal law. Currently, several large federal agencies, such as the Federal Deposit Insurance Corporation (FDIC), Federal Savings and Loan Insurance Corporation (FSLIC), Housing and Urban Development (HUD) and Veterans Administration (VA), pay municipalities taxes for property which they have taken title to under a foreclosure proceeding. *Farm Home Administration (FmHA) feel they are exempted by our statutes. CSSB 70 (FIN) would clarify this and Farm Home Administration would be required to pay taxes on their foreclosed property if this legislation is passed.*

(Emphasis added.) The minutes of the Senate Finance Committee hearing on SB 70 expressly reflect the bill's purpose: allowing municipal taxation of FmHA-foreclosed property. Senator Pearce explained:

> Inequities [regarding local real property taxation] have been created because exempt properties bear no tax burden but receive the same services as when they

---

5. In interpreting a statute, "our goal is to give effect to the intent of the law-making body with due regard for the meaning that the language in the provision conveys to others." *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995) (quoting *Foreman v. Anchorage Equal Rights Comm'n,* 779 P.2d 1199, 1201 (Alaska 1989)). In an effort to meet this goal, we have "rejected a mechanical application of the plain meaning rule in favor of a sliding scale approach." *Id.* (quoting *Peninsula Marketing Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991)). Under the sliding scale approach, the plainer the statutory language, the more convincing contrary legislative history must be. *Id.; City of Homer v. Gangl,* 650 P.2d 396, 400 n. 4 (Alaska 1982).

were in private ownership. CSSB 70 (CRA) would correct inequities and give municipalities the revenue to which they are entitled. The bill also extends to similarly held federal properties not otherwise exempt. Currently, several large federal agencies (Federal Deposit Insurance Corporation, Federal Savings and Loan Insurance Corporation, Housing and Urban Development, and Veterans' Administration) pay municipal taxes on property to which they have taken title. However, Farmers Home Administration feels that it is exempt by Alaska statutes because the statutes are silent.

Senator Pat Pourchot, referring to FmHA, asked if Section 2(a)(8) contained the provision expected to bring the federal government into compliance. Senator Pearce then "indicated that the bill drafter explained that it makes clear that [FmHA] will have to pay along with other federal agencies."

Although these comments do not specifically discuss the meaning of "retained as an investment," [6] they clearly demonstrate that the Senate Finance Committee intended that property foreclosed upon by FmHA and held for resale be subject to taxation under AS 29.45.030(a)(1)(B).[7]

### C. Public Policy

In *Greater Anchorage Area Borough v. Sisters of Charity*, 553 P.2d 467 (Alaska 1976), we expressed the public policy underlying taxation:

> All property is benefitted by the security and protection furnished by the State, and it is only just and equitable that expenses incurred in the operation and maintenance of government should be fairly apportioned upon the property of all. An exemption from taxation releases property from this obligation to bear its share of the cost of government and serves to disturb to some extent, that equality in the distribution of this common burden upon all property which is the object and aim of every just system of taxation. While reasonable exemptions based upon various grounds of public policy are permissible, yet taxation is the general rule.

*Id.* at 469 (quoting *Animal Rescue League v. Assessors of Bourne*, 310 Mass. 330, 37 N.E.2d 1019, 1021 (1914)).

Agency foreclosure properties held for resale receive the benefits and protection of services provided by local governments, including police, emergency services, fire, water, sewer, road maintenance, and schools. Largely through taxation, the properties benefitted by these services bear their proportionate burden for the cost of the services provided to them. If such property is exempt from taxes, other taxpayers in the Bor-

---

**6.** We note that an agency in the executive branch has read the amended statute to expose to taxation property retained by a state agency for resale. In a post-amendment letter to the Attorney General requesting a legal review of AS 29.45.030(a)(1)(8), the Director of the Municipal and Regional Assistance Division of the Alaska Department of Community and Regional Affairs addressed the meaning of "retained as an investment of a state entity":

> The specific language in question is "... retained as an investment of a state entity is taxable...." This language originated from the Alaska Association of Assessing Officers whose intent was to separate property which might be used by a state agency from property which was to be resold in the market place. It was and is the A.A.A.O.'s position that the holding of property for resale constituted an investment, therefore meeting the criteria set forth in AS 29.45.030(a)(1)(B) for taxation.

This concession is consistent with our reading of the statutory language and our response to the question we asked the parties to brief.

**7.** In enacting 42 U.S.C. § 1490h, the U.S. Congress expressly addressed the taxability of FmHA property held for other than administrative purposes. A House Conference Report on the bill that was codified as 42 U.S.C. § 1490h states:

> The House bill contained a requirement that, effective January 1 of the year of enactment, FmHA-held or acquired property other than property used for administrative purposes be subject to State and local taxes. The Senate amendment was similar to the House provision except that any jurisdiction which has received, prior to enactment of this bill, tax payments from the Department of Agriculture shall not be liable for, or be obligated to refund, such payments. The conference report contains the Senate provision.

H.R.Conf.Rep. No. 634, 95th Cong., 1st Sess. 71 (1977) *reprinted in* 1977 U.S.C.C.A.N. 2965, 2991–92.

oughs must subsidize the services provided to the property. Public policy dictates that a state agency which acquires property through foreclosure should pay its share of the costs of these services.[8]

## IV. *CONCLUSION*

We hold that the phrase "retained as an investment" in AS 29.45.030(a)(1)(B) means that real property acquired by a state agency through foreclosure and retained for resale is subject to local taxation under AS 29.45.030(a)(1)(B). We answer "yes" to the question we asked the FmHA and the Boroughs to brief.

---

[8]. The FmHA regulation regarding taxes on inventory real property acknowledges that FmHA should pay a pro rata share of taxes and assessment installments for property improvements. 7 C.F.R. § 1955.135 (1995) states in relevant part:

> Where FmHA ... owned property is subject to *taxation, taxes and assessment installments* will be prorated between FmHA ... and the purchaser as of the date the title is conveyed.... The purchaser will be responsible for paying all taxes and assessment installments accruing after the title is conveyed.... Only the prorata share of assessment installments for property improvements (water, sewer, curb and gutter, etc.) accrued as of the date property is sold will be paid by FmHA.... At the closing, payment of taxes and assessment installments due to be paid by FmHA ... will be paid from cash proceeds FmHA ... is to receive as a result of the sale or by voucher....

Although this regulation is not determinative (because the regulation does not apply here unless AS 29.45.030 permits the taxes assessed by the Boroughs), it implicitly recognizes the benefits conferred on FmHA property by municipalities, and expressly provides a mechanism for apportioning the costs of such benefits.