UNIVERSITY OF ALASKA, Petitioner,
Cross–Respondent,

v.

Doctor SHANTI, Respondent,
Cross–Petitioner.

UNIVERSITY OF ALASKA, Petitioner,
Cross–Respondent,

v.

Brownie DIX, personal Representative of the Estate of Barbara Dix Patten, Deceased, for the Benefit of Annemiek Zoe Patten, the deceased's minor child, and Annemiek Zoe Patten, By and Through David Patten, natural father and guardian, and Brownie Dix and Robert Dix, the natural parents of Barbara Dix Patten, Respondents, Cross–Petitioners.

Nos. S–4243, S–4311, S–4244 and S–4292.

Supreme Court of Alaska.

June 30, 1992.

OPINION

BURKE, Justice.

In this consolidated petition for review, the University of Alaska argues that the superior court erred in denying its summary judgment motion. The court denied the motion after concluding that the University gained no immunity under AS 09.-45.795, Alaska's recreational use/landowner immunity statute. The trial court ruled that the University ski hill, the site of a sledding accident, did not qualify as "unimproved land," a prerequisite to immunity under the statute, because it is situated "in an urban or near an urban area." The University petitioned to challenge this ruling. Doctor Shanti and Brownie Dix *et al.* (hereafter Shanti) cross-petitioned, claiming the trial court erred in ruling that the accident site would have qualified as "unimproved land" but for its urban location.

We consolidated the petitions and granted them solely to review the trial court's interpretation of "unimproved land" as the phrase is used in AS 09.45.795. After examining the language, history, and purpose of this statute, we conclude that the superior court erred in reading an urban/rural distinction into the statute. Nevertheless, as there can be no doubt that the University ski hill is "improved land," the superior court correctly ruled that the University gains no immunity under the statute. Accordingly, we affirm the court's denial of the University's summary judgment motion and return the case for trial.

Gerard R. LaParle and Peter Ashenbrenner, Bradbury, Bliss & Riorden, Fairbanks, for petitioner/cross-respondent University of Alaska.

Donald F. Logan, Law Offices of Donald F. Logan, Fairbanks, for respondent/cross-petitioner Shanti.

Valerie M. Therrien, Fairbanks, for respondents/cross-petitioners Dix.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

I

In October 1988 Barbara Dix Patten, Doctor Shanti, and Scott Wright were sledding on a ski hill located on the University of Alaska, Fairbanks campus. On their third trip down the hill, Shanti and Patten lost control and struck a cluster of trees. Shanti and Patten were seriously injured in the collision. Patten ultimately died from her injuries.

Shanti and Patten's estate filed virtually identical complaints against the University alleging that the University was negligent in maintaining the hill and failed to protect

users against a known danger (i.e. the propensity of the hill's terrain to propel sledders into the trees). The University moved for summary judgment on both complaints arguing that the ski hill is unimproved land and, as an owner of unimproved land which is open to the public for recreational purposes, it is immune from suit for mere negligence under AS 09.45.795.[1]

Superior Court Judge Richard D. Savell held a hearing on the University's motion. Counsel for the University argued that the cleared ski hill is "unimproved land" within the meaning of AS 09.45.795. Shanti's counsel responded:

> This is the unimproved slope. This unimproved slope has no grass on it because they mow it during the summer. It's got a building on it. I believe one of the affidavits at one point talked about the light that was there and it used to run a rope tow. That's unimproved.[2]

Judge Savell issued an oral ruling on the summary judgment motion. He noted that it was difficult to determine from the language of AS 09.45.795 which land is covered by the immunity provision:

> Property that is unimproved but has an abandoned improvement, such as a road, such as a landing strip or a trail, is not stripped of being unimproved. It does not mean, in this [c]ourt's view, that improved property that has an unimproved portion and an injury occurs on the unimproved portion is immune. The [c]ourt

doesn't know how or where the line would be drawn; from a homeowner's front lawn that is mowed to a back lawn that is not mowed?

The judge then looked to the legislative history of the original 1980 act and the 1988 amendments. He found comments in a 1987 House Judiciary Committee hearing which he believed indicated a legislative intent to exclude urban areas from the coverage of the immunity provisions. He stated that if this were:

> a plain meaning state, and we're not, the plain meaning [of "unimproved land"] as applied to the pictures put before the [c]ourt would immunize this area. That grassy slope is an unimproved portion of property. But every piece of real estate not covered by a building on that campus would so be classified, unless also covered by asphalt or concrete.

> But the University is not within the coverage because of its setting, because of its setting in an urban or near an urban area....

> ....

> The [c]ourt concludes that despite the plain language of the statute, the legislative history discloses an intent to exclude this land and apply it only to rural settings.

The parties then filed separate petitions for review challenging different aspects of Judge Savell's ruling.[3]

---

1. AS 09.45.795 (Supp.1991) provides:

 (a) An owner of unimproved land is not liable in tort, except for an act or omission that constitutes gross negligence or recklessness or intentional misconduct, for damages for the injury to or the death of a person who enters onto or remains on the unimproved portion of land if
 (1) the injury or death resulted from a natural condition of the unimproved portion of the land or the person entered onto the land for recreation; and
 (2) the person had no responsibility to compensate the owner for the person's use or occupancy of the land.
 ....
 (c) In this section, "unimproved land" includes land that contains
 (1) a trail
 (2) an abandoned aircraft landing area; or

 (3) a road built to provide access for natural resource extraction, but which is no longer maintained or used.

2. Shanti's brief and the affidavits submitted at the summary judgment hearing cite many man-made changes in the hill's natural character. They claim that the University cleared the hill, removed stumps, planted and mowed grass on the hill, built buildings and ball fields, and erected light poles and exercise stations on the hill. The University does not dispute that the hill is "cleared" and "mowed," nor that is located next to the Patty Gym and the hockey rink on the main campus.

3. In reviewing denials of summary judgment motions, we independently determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Drake v. Hosley,* 713 P.2d 1203, 1205 (Alaska 1986). We draw all

## II

■ Alaska Statute 09.45.795, as originally enacted, provided uncompensated owners of "unimproved land" immunity from tort liability for injuries resulting from a natural condition of the unimproved property.[4] A 1988 amendment to the section expanded the scope of the immunity coverage but also expressly limited immunity to liability arising from merely negligent acts. A recreational user of an unimproved portion of land can now only bring suit against the owner of "unimproved land" for reckless or intentional misconduct. AS 09.45.795 (Supp.1991). In addition, tracts of land with trails or abandoned roads and landing strips are deemed to be "unimproved land" under the amended statute. *Id.* However, neither the original 1980 version of the section nor the 1988 amendment define the term "unimproved land" or explain exactly which land is to be immunized under the statute.[5]

■ The 1980 bill (HB 865), which became AS 09.45.795, was designed to limit liability to landowners as a means of encouraging them to open up their land to recreational users. Representative Halford, the bill's sponsor, highlighted the potential ambiguity of the term "unimproved land":

One of the questions that was brought up in consideration of this bill is whether we should define exactly what unimproved land is. Because a definition of this type covers a lot of areas, it was felt that it was better, in consideration of the issues, not to define it but to allow it to be defined as it has in the past under common law through the procedure of past and present and future cases that deal with the subject. *So that definition is not included in the bill, and that's a basic policy decision that leaves that portion of it to the courts.* However the bill is a substantial gain for, as I say, property owners and recreational users who would like to use property belonging to somebody else. It doesn't affect property that [is] improved in any way.

House Debate re: H.B. 865 4/24/80 (emphasis added). The legislature passed the bill without a definition of "unimproved land," thus signalling its willingness for our courts to define the term in accordance with prior judicial construction.[6] This is the first opportunity we have had to construe this section.

The 1988 amendment added a new layer of ambiguity as to the exact meaning of

---

reasonable inferences in favor of the nonmoving party and against the movant. *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.,* 604 P.2d 1113, 1116 (Alaska 1980) (citing Alaska R.Civ.P. 56(c)).

4. The original statute provided:

 **Civil liability for personal injuries or death occurring on unimproved land.** An owner of unimproved land is not liable in tort for damages for the injury to or death of a person who enters onto or remains on the unimproved portion of land if (1) the injury or death resulted from a natural condition of the unimproved portion of the property; and (2) the person had no responsibility to compensate the owner for the person's use or occupancy of the property.
AS 09.45.795 (1983). Although the statute refers to "land," we are convinced that the legislature intended the term to be read broadly to include natural bodies of water (i.e. lakes and rivers).

5. We interpret this statute using our independent judgment. *Wien Air Alaska, Inc. v. Department of Revenue,* 647 P.2d 1087, 1090 (Alaska

1982). Statutes which establish rights that are in derogation of common law are to be construed in a manner that effects the least change possible in common law. *Hugo v. City of Fairbanks,* 658 P.2d 155, 161 (Alaska App.1983); *see also Monteville v. Terrebonne Par. Con. Gov't,* 567 So.2d 1097, 1100 (La.1990) (applying this principle to interpretation of recreational use statute). Since this statute abrogates the duty of care for property owners established in *Webb v. City & Borough of Sitka,* 561 P.2d 731 (Alaska 1977), we will narrowly construe its scope.

6. Our standard procedure is to give words their ordinary and common meaning when interpreting a statute. *Foreman v. Anchorage Equal Rights Comm'n,* 779 P.2d 1199, 1201 (Alaska 1989). However, the phrase "unimproved land" has acquired a particular legal definition through caselaw and the legislature clearly intended the term to be interpreted with reference to this prior law. *See Wilson v. Municipality of Anchorage,* 669 P.2d 569, 571 (Alaska 1983) (unless words have acquired a particular meaning through statutory definition or judicial construction, they should be construed in accordance with their common usage).

the phrase "unimproved land." The 1988 amendment began as an attempt by the Alaska Federation of Natives, native regional corporations, the University of Alaska and other large landholders to pass a broader recreational use statute, patterned after the Model Act.[7] *See* House Judiciary Committee Hearing on H.B. 198 Re: Permissive and Non–Permissive Use of Land, May 7, 1987 (statements of Lawrence Kimball, Land Manager for the Alaska Federation of Natives). The original bill included a section taken from the Model Act that would have abrogated the common law duty of care for any "owner of land who makes land available to the public without compensation for recreational purposes." H.B. 198, 15th Leg., 1st Sess. (1987). Almost all of the discussion of this section focused on the burden and unfairness to a landowner of a large, remote, virtually unimproved tract of land when liability is imposed because a trespasser is injured on some unknown or abandoned "improvement." *See e.g.* House Judiciary Committee Hearing on H.B. 198 Re: Permissive and Non–Permissive Use of Land, April 7, 1988.

However, the House Judiciary Committee deleted this section after the Trial Lawyers Association protested that the immunity provision was too broad and would immunize residential property in Anchorage. *See* House Judiciary Committee Hearing on H.B. 198 Re: Permissive and Non–Permissive Use of Land, April 12, 1988. Avrum Gross, the Trial Lawyers Association representative, outlined the bill's history to the Senate Judiciary Committee:

> The original bill.... covered all land wherever located, urban land—it covered your back yard, it covered the neighborhood children who come into your yard, it was purely accidental, and so the Trial Lawyers of course were spinning around and were very concerned about making changes in the law, and we got together with the AFN and sat down and tried to figure out exactly what it was that they wanted to accomplish in this bill.
>
> [The revised bill] limits the application of the bill to unimproved land, and it really—it's not a major change for present law.
>
> It does, however ... define unimproved land as including trails or access roads to past development, which would of course include logging roads, mining roads, things like that, where a lot of activity occurs of course, and I think a lot of the native corporations were concerned that land was being transferred to them that might have trails and such that they weren't aware of, and that it would not be included as unimproved land.

Senate Judiciary Committee Hearing on H.B. 198 Re: Permissive and Non–Permissive Use of Land, April 28, 1988.

The version of the bill that finally passed represents a compromise between the Trial Lawyers Association and the large landholders. The legislators acknowledged

---

7. The "Model Act" refers to a model recreational use immunity statute promulgated by the Council of State Governments, entitled "Public recreation on private lands: limitations on liability." *See* 24 Suggested State Legislation 150 (1965). The 1964 and 1965 versions of the Model Act both provide immunity to "an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes." The 1965 act also defines "land" very broadly to include "real property, land and water, and all structures, fixtures, equipment and machinery thereon." *See* 24 Suggested State Legislation at 150.

The scope of immunity provided by recreational use statutes has been extensively examined in other jurisdictions. *See* Annotation, *Effect of Statute Limiting Landowner's Liability for Personal Injury of Recreational User*, 47 A.L.R.4th 262 §§ 9–13 (1986); *see also* J. Riffer,

Sports and Recreational Injuries §§ 5.10–14 (1985). Most jurisdictions have adopted some version of the Model Act, however they have "utilize[d] a variety of terms to describe the property to which the statute applies." Annotation, 47 A.L.R.4th at 271 (referring to "premises" and "commercial property"). *See also e.g.* N.J.S.A. 2A:42A–2 (New Jersey adopting "premises" language); Wis.Act. § 895.52(2)(a) (Wisconsin adopting "property" language); O.R.S. 105.655 & 105.665 (Oregon adopting "land" but defining "land" as "agricultural land, range land, forest land, ... including ... private buildings and structures on such lands...."); Ariz.Rev.Stat.Ann. § 33–1551 (Arizona adopting "premises" but defining "premises" as "agricultural, range, mining or forest land, and any other similar lands which by agreement are made available to a recreational user, and any building or structure on such lands.").

that the final bill was obscurely drafted and never specified the scope of the term "unimproved land." Taking the legislative history as a whole, however, three features of the 1988 amendment stand out:

1) The bill is intended to protect owners of large, often remote parcels of unimproved, or virtually unimproved, land from liability so that they will open their land to recreational use.

2) The legislature meant to expand the term "unimproved land" to include the type of "improvements" which would normally be found in the bush and were either unknown to the landowner or were not in active use (i.e. abandoned roads, gravel pits etc.).

3) The statute applies to every square inch of unimproved land in the state. However, immunity is *not* to be extended to primarily improved property which has a portion of unimproved property.

### III

The University maintains that AS 09.45.-795 is virtually indistinguishable from the Model Act. Therefore, much of its argument focuses on the policy goals furthered by the nationwide trend toward adoption of recreational use statutes patterned after the Model Act. The University cites, as

persuasive authority, cases from other jurisdictions which have refused to create an urban/rural distinction or other exception to the blanket immunity provided by their recreational use statutes.[8]

However, as Shanti points out, the cases cited by the University interpret recreational use statutes patterned closely after the Model Act. *See supra* note 8. Furthermore, the University fails to cite several cases in which state courts have limited the scope of their recreational use statute even though they were interpreting statutes which employed the broader language of the Model Act.[9] Neither party has cited, nor have we discovered, a pure recreational use statute from another jurisdiction which expressly limits the immunity coverage to "unimproved land."

The problem with the University's analysis is its assumption that our legislature intended AS 09.45.795 to embody the same policy goals and have the same effect as the Model Act. In fact, the legislative history of AS 09.45.795 clearly demonstrates that the act is much narrower in scope both in its language and its purpose.

There is no question that AS 09.45.795 only immunizes the University if the sledding hill is deemed to be "unimproved

**8.** *See e.g. Boaldin v. University of Kansas,* 747 P.2d 811, 813 (Kan.1987) (On facts similar to those presented in this case, the court refused to go beyond the plain meaning of the statute and held that a hill on the campus which was used for sledding, football, and other sports, was "public property ... permitted to be used as a park, playground or open space for recreational purposes" and, therefore, fell within the immunity protection of the state's recreational use statute.); *Dean v. Glen Falls Country Club, Inc.,* 170 A.D.2d 798, 566 N.Y.S.2d 104, 105 (1991) (similar facts, recreational use statute which provides that "an owner ... of premises ... owes no duty to keep premises safe for ... use by others for ... tobogganing" applies to a "developed and commercially used" golf course in an urban setting) (following *Iannotti v. Consolidated Rail Corp.,* 74 N.Y.2d 39, 544 N.Y.S.2d 308, 542 N.E.2d 621 (1989)).

**9.** *See e.g. Walker v. City of Scottsdale,* 163 Ariz. 206, 786 P.2d 1057 (App.1989) (Urban greenbelt area did not fall within statutory definition of "premises" in Arizona's recreational use statute because statute defined the term as "agricultural, range, mining or forest lands and any

similar lands [including] buildings."); *Monteville v. Terreborne Par. Con. Gov't,* 567 So.2d 1097, 1104 (La.1990) (interpreting statute with the language of the Model Act, court narrowly construed "land" to exclude a boat launching facility because "in view of the purpose and policy considerations of the [Model Act], ... the statutes must be strictly interpreted to limit liability only when the recreational activity takes place on large, remote acreage ... suitable for one of the specified recreational purposes."); *Harrison v. Middlesex Water Co.,* 80 N.J. 391, 403 A.2d 910 (1979) (term "premises" in recreational use statute does not include land situated in residential and populated neighborhoods.); *Tijerina v. Cornelius Christian Church,* 273 Or. 58, 539 P.2d 634 (1975) ("legislative history of [Oregon's recreational use statute indicates legislative intent] to limit its application to landholdings which tended to have recreational value but not be susceptible to adequate policing or correction of dangerous conditions."); *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991) (interpreting statute containing broad language of the Model Act, "land" does not include asphalt-covered municipal playground).

land" or an "unimproved portion of land." The adjective "improved" when used to describe real estate generally denotes land containing man-made additions, usually of a permanent nature, which tend to increase the value of the property. *Black's Law Dictionary*, Sixth Edition (1990) defines "improved land" as "real estate whose value has been increased by landscaping and addition of sewers, roads, utilities and the like." Conversely, "unimproved land" is defined as "lands, once improved, that have reverted to a state of nature, as well as lands that have never been improved." *Id.*

Shanti argues that the University's actions of clearing trees, mowing grass and placing lights and other "incidental improvements" on the hill make the hill "improved land" as a matter of law. Other jurisdictions have examined the effect of "incidental improvements" when interpreting immunity statutes designed to protect governmental entities from liability for accidents on "unimproved land." [10]

In *McKenna v. City of Fort Wayne*, 429 N.E.2d 662 (Ind.App.1981), the court adopted a "distinct and remote" test to determine when incidental improvements near an accident site were sufficient to make a public park "improved land" and, therefore, take it outside the protection of the public immunity statute.[11] The court stated:

> we conclude ... that the improvements undertaken in the tree's vicinity were neither so "remote" nor "distinct" from the tree as to preserve any immunity for the city under our statute.... Supporting this conclusion are the facts the grass was mowed, the picnic table was under the tree, and the playground was within that area. Arguably, anyone us-

ing that part of the park could have perceived himself as being in a position of relative safety and not in a "wilderness."

*Id.* at 666.

In *Freitag v. Morris City*, 177 N.J.Super. 234, 426 A.2d 75 (App.Div.1981), the court held that a sledding hill was "unimproved public property" under a liberal construction of the term and therefore fell within the scope of the public immunity statute.[12] The hill had been cleared of timber and brush before the city bought the property. *Id.* at 76. It was located in a large recreation area which included a golf course but also consisted of "woodland and open fields." The court stated that "the hill on which plaintiffs were tobogganing is in the undeveloped portion of the property, several hundred yards from the golf course." The court stated:

> We do not consider the sledding hill to be improved land simply because it was once cleared by New Jersey Central Power and Light Company. In this case, defendant did not improve the land and has not maintained it.

*Id.* at 78 (citation omitted).

In *Troth v. State*, 117 N.J. 258, 566 A.2d 515 (N.J.1989), the New Jersey Supreme Court generally approved of the approach taken in *Freitag*. The court cited with approval the comments of Professor Arvo Van Alstyne who served as consultant to the commission that drafted California's Tort Claims Act of 1963 (on which New Jersey's statute was modeled):

> property loses its "unimproved" status when there is 'some form of physical change in the condition of the property at the location of the injury, which justifies the conclusion that the public entity is

---

**10.** These statutes are relevant to an interpretation of AS 09.45.795 because the language they employ is very similar to the language in AS 09.45.795. *See infra* notes 11–12. On it face, AS 09.45.795 reads like an amalgam of a traditional recreational use statute and an "unimproved public land" immunity statute.

**11.** The court was interpreting § 3(1) of the Indiana Tort Claims Act, Ind.Code 34–4–16.5–1 which provided in part that a "governmental entity or an employee acting within the scope of

his employment is not liable if a loss results from: (1) the natural condition of unimproved property."

**12.** The statute provided:

> Neither a public entity nor a public employee is liable for an injury caused by a condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach.

*Id.* 426 A.2d at 77 (quoting N.J.Stat.Ann. 59:4–8).

responsible for reasonable risk management of the area.'

*Id.* 566 A.2d at 521 (quoting A. Van Alstyne, *California Government Tort Liability Practice* § 3.42 (1980)).[13]

## IV

 The approach taken by these courts is, in our opinion, eminently reasonable and provides parameters for distinguishing between improved and unimproved land which comport with the language and purpose of AS 09.45.795. Accordingly, we hold that trial judges should consider factors such as the following in order to determine whether a particular tract of land is entitled to AS 09.45.795 immunity on a motion for summary judgment. The judge should consider (1) the proximity of improvements to the accident site [14]; (2) the extent of property maintenance undertaken by the landowner [15] and (3) whether the character of the property as a whole justifies the conclusion that the landowner is responsible for reasonable risk management of the area.

 If, based on the application of these factors, the trial court concludes that reasonable jurors could disagree on whether the accident site is "unimproved land," the summary judgment motion should be denied and the issue should be presented to the jury. If no reasonable disagreement is possible, the trial judge may rule on the issue as a matter of law.[16]

 In the present case, the superior court clearly erred in concluding that the legislature intended all urban or semi-urban land to fall outside the scope of the immunity statute. Certainly a pure vacant lot located in Anchorage or Fairbanks comes within the meaning of "unimproved land." Nothing in the legislative history relied on by the trial court indicates otherwise. Nevertheless, we must agree with the trial court's ultimate conclusion that the University ski hill is "improved land" and falls outside the scope of the immunity statute as a matter of law.

The hill in question is a maintained, landscaped section of the main university campus located next to a gymnasium and a hockey rink. Based on these undisputed characteristics, we believe that no reasonable juror, considering the factors we have just listed, could conclude that the ski hill is "unimproved land" or an "unimproved portion of land" within the meaning of AS 09.45.795.

The superior court's denial of the University's summary judgment motion is AFFIRMED.

**13.** *See also Mercer v. State,* 197 Cal.App.3d 158, 242 Cal.Rptr. 701, 704 (1987) (construing Cal. Gov't Code § 831.2 (West 1991) in a similar fashion).

**14.** Of course, the judge must disregard the type of improvements listed in AS 09.45.795(c) (i.e. trails, abandoned roads and the like).

**15.** We are not unmindful of the possibility that this consideration might discourage landowners from maintaining their property thus making land potentially more dangerous. Certainly placing warning signs or protective fences on property should never be considered an improvement which defeats immunity protections. *See Mercer,* 242 Cal.Rptr. at 708 (warning signs should not be considered an improvement stripping otherwise unimproved land of immunity).

The focus should be on whether the "improvement" is designed primarily to protect recreational users or actually increases the value or usefulness of the land for the benefit of the property owner.

**16.** It is clear that the interpretation of the phrase "unimproved land" presents a legal question to be resolved by a judge. Nonetheless, a jury may be required to determine whether a particular tract of land falls within the legal definition if material issues of fact exist as to the land's physical condition. There are no such issues in this case. *See McGee Steel Co. v. State ex rel. McDonald Industries Alaska, Inc.,* 723 P.2d 611, 614 (Alaska 1986) (material issue of fact exists, for purposes of summary judgment motion, where reasonable jurors could disagree on resolution of factual issues).